for 3-0 Kellogg Brown and Root Services versus United States. Judge Moore, may it please the court. We have two very powerful problems in this case. One is, strictly speaking, a legal issue. Are we foreclosed from reaching that legal issue as a panel because a prior panel of this court has already decided it recently? Your Honor, all I can hope is that that is not the case because... Wait, do you have any reason to believe that one panel of the court is able to disregard a matter of law decided by another panel of the court? No, Your Honor, but I believe that the, I'll call it the Tamimi panel, the prior panel in the first of these two cases, did not really reach the subject of the legal standard to be applied in a cost reimbursement type contract. It slid right past it. Really? Because your briefing in both cases is virtually identical, which is efficient of you. Why charge the client to write these briefs twice? Different counsel, though. You weren't on that case, right? I was not, Your Honor. But the briefing, the arguments seem to be identical. Maybe I'm misremembering, but I don't understand. What part, please do tell me, which part did, of the legal standard, are we as a panel able to add to? If you look at the opinion in the first case. I am, Your Honor. Okay. I've got mine off Westlaw, so you may have yours in a different thing. Oh, I have the slip-off, Your Honor. Okay. So the opinion, you get in a few pages and they start talking about the FAR 31-201-3-B. Correct, Your Honor. And it says KBR admits the language above emphasis is non-exclusivity, et cetera, et cetera. Notwithstanding, their core argument is that the federal claims committed legal error by applying an improper standard. Correct, Your Honor. Right? After reviewing the reasonableness of costs under the, relating to the regulation. The client there said they require only that he give his best efforts when performing, that it costs are payable absent gross misconduct or absent arbitrary action or clear abuse of discretion. It goes over to the next column. They talk now about our prior authority and they say, absent the court's example, was any suggestion that the overcharge must be based on gross negligence or arbitrary behavior. Although evidence of willful misconduct, gross negligence or arbitrary conduct could well provide a basis for a contracting officer to disallow costs, such evidence is not required. Now, your test that you say in this case is you're saying if you've got to show gross negligence, willful misconduct or what's the third in your formulation of your test, right? Our test, Your Honor, under this contract, which was a cost reimbursement contract, is that the costs are allowable if they are allowable under the Federal Acquisition Regulation. That's right. And we're now talking about allowability and not yet talking about reasonableness. They are allowable costs if they meet the tests under FAR Part 31, Subpart 2. And there are 52 separate categories of costs that are addressed specifically under FAR Part 31, Subpart 2. And that's in Section 205. There are 52 separate categories. And those categories define what costs are allowable. And in some cases, they further define the amounts, the conceptual amounts that will be allowable. Going backward. But even though a cost is allowable, it has to be reasonable, right? A cost to be allowable has to be reasonable. So the standard that we're talking about here, which we believe is a legal standard, is what constitutes reasonableness in a government contract. And the regulations themselves differentiate fixed-price contracts from cost reimbursement contracts. But I guess I'm misunderstanding, because the section Judge Clevenger just read addresses exactly this head-on, right down to the exact same provision of the FAR, and says that under reasonableness, you don't need to have gross negligence, arbitrariness, willful misconduct. None of those things are required in order to conclude that the behavior was unreasonable. And I understood your briefing in this case to be arguing that exact proposition, which has already been resolved. Your Honor, all that got resolved were the negatives, meaning that all that got resolved was what is the limit on cost allowability. How one defines reasonableness itself did not get determined in the TAMIMI decision. And that is what we bring to the Court today, because the standard for reasonableness in a cost-type contract is very different from that in a fixed-price contract. But the Court said whatever the standard, even if I accept what you're saying, they didn't define reasonableness, they said whatever reasonableness means, it doesn't mean gross negligence, willful conduct, or arbitrary, that none of those things would be required in order to decide conduct was unreasonable. And I believe, unless I'm mistaken, those are the identical adjectives that you used in this case. We did, Your Honor. This is the same contract, same-phase contract. Yes, Your Honor. It's a cost contract there, it's a cost contract here. Yes, Your Honor. This was a cost contract that was awarded in December of 2001. It was the third of a series of what we call log-cap-type contracts. It was intended to be the kind of contract that you pull off the shelf and you get the company to go and support military operations around the world. What happened was it became the largest single contract in the history of the United States, $38 billion. The briefing is good on this, and we're aware of it. The problem that the bench is having with you at the moment is that the bench is feeling constrained by the previous opinion, which rejected the notion that willful misconduct or gross behavior, gross negligence, has to be shown in order to disallow a cost as unreasonable under the pertinent reg, the same reg that we have in this case. I think perhaps I would have to agree with you, Judge Clevenger, that that strains over to the right, maybe over to the left. There are other grounds for disallowing a cost under a cost-type contract. First, the cost may be unallowable under the regs themselves. In other words, under 31 subsections, a type of cost. That's allowable for another thing, but the question here is reasonableness under the reasonable standard. It sort of dawns on me that what has really happened here is there used to be a presumption that if a contractor put in the cost, it was reasonable. Under those days, it was up to the government to come in and put the burden to show that it was unreasonable. And that was probably hard for the government to show that. It was. And so when the FAR flipped the presumption, all of a sudden, the cascade. Because at that stage in the game, somebody over in Arlington, years after the contract was formed, looking at this, totally unrelated to the scene and what happened, totally unwarranted, can say, hmm, there's something in here that shows that you had negotiating power. That's the other case. You had $40 million worth of leverage and you didn't use it. And so you were unreasonable. That's without even asking why they didn't use it. Lots of times you have leverage and you don't use it. You want to save it for another day. But see, that's what happened is that after the fact, looking over the records, that is bothering you. It didn't exist when the presumption ran the other way. Your Honor, we're stuck with reasonableness. We cost reimbursement contractors $140 billion a year, by the way. We're stuck with the notion of reasonableness. So what we're talking about is not the notion of reasonableness. We're talking about what constitutes reasonableness under a cost-type contract versus a fixed-price contract. And if you look at the regulation itself, it doesn't tell you anything about that. It doesn't say anything about how you differentiate. Assuming for purposes of argument that we had, that I agreed with you, that there was some clear daylight between the first case and this one, so we could actually accept your argument that in order for a cost to be unreasonable under 32013, the cost had to be showing of gross negligence or willful misconduct, assume that's true. I think your standard is wrong. 31203 is drawn to prudent behavior, prudent conduct. Correct, Your Honor. And grossly negligent people aren't prudent. I agree, Your Honor. So, I mean, I was just thinking of circumstances like, for example, if somebody out in New York for your contractor had behaved in a known negligent way, they had decided to buy a particular type of material to use in the dining hall or whatnot, and they had totally just negligently ignored that there were materials that were cheaper to get or something. So it was total negligent behavior. Under your standard, it would still be a reasonable cost. Your Honor, let me pursue that example. I do, Your Honor. Because there could come a time where the negligent conduct was so gross, one would have to regard the conduct as being ultra-virus to the contract. However, if they bought the wrong materials for the dining room, the government would pay for the mistake, assuming that it was a mistake, because one of the unique clauses in a cost reimbursement type contract is the inspection clause, and it covers inspection of goods and inspection of services. If under a cost type contract, unlike a fixed price contract, under a cost type contract, if the goods are rejected... Counsel, I actually think that you're completely right, that even if there's a mistake, government pays, but don't they only pay the reasonable cost, even when there's a mistake? I believe the case law says that. I respectfully disagree. They don't pay the mistaken amount. They only pay the reasonable cost. I respectfully disagree, Your Honor. They pay the total amount, and the only time that they don't pay the total amount is if the total amount is so grossly outrageous as to be ultra-virus conduct. That's what cost reimbursement contracts are about. Is there anything you can point me to that would indicate that they pay the total amount as opposed to only the reasonable amount in the case of identified mistakes by both parties? Your Honor, the answer to your question is... In the FAR, anything? This is not funny, but for me, after 50 years of litigating these cases, it seems a little strange. The answer to your question is no, Your Honor. There is nothing to point to because this Court and the Armed Services Board and the Court of Claims and the Court of Federal Claims have never decided a single case in which the direct costs incurred under a cost reimbursement contract have been challenged on the grounds of reasonableness. There is not one single case. And I went back and I looked at 75 years of such cases, not a one. Well, I can understand why before they flipped the presumption in the reg,  Nonsense, Your Honor. Nonsense. And there's a reason for that. And the reason is that cost reimbursement contracts are intended to be risk-shifting. The regulations say they are intended to be risk-shifting. And you're not shifting the risk if you put upon the contractor the burden of DCAA second-guessing all the costs. I want to come back because, I mean, I tell you where I am, I think I'm constrained. I think that your argument for the standard that you're asking for was rejected in the first time around. And, of course, when you get to the facts as to whether or not you lose under that. In the other appeal, the opinion that was written by Judge Wallach said that you analogized your standard to the business judgment rule, which is a slightly different iteration than was articulated earlier, the gross misconduct. It is, Your Honor. Yeah. And so I'm assuming that somebody is busily preparing a petition for rehearing in bank in the first case. That is correct, Your Honor. And I assume somebody is trying to fashion exactly the language, the words that you think ought to be the appropriate words. And I take that as a suggestion, Your Honor. I'm making a suggestion. Because we've perhaps overstated. I'm suggesting to you that I think the gross negligence is asking for too much. It is. Because it just fights up against the prudent man, the person on the clap-a-mama, the person we learned about in torch class. Correct. Right. Correct, Your Honor. Torch, you get nailed if you're just negligent, right? Under cost reimbursement contracts, the contractor doesn't get nailed for tortuous negligence. The government pays the bill. And the government pays the bill for all kinds of conduct that would not be paid for by the government under a fixed-price contract. And that's risk shifting. So if a contractor's driver is driving the truck full of cement down the road, they negligent run into Clevengers, Mercedes, Benz, or whatever, and the cost is incurred, the government will pay them. That's correct, Your Honor. Even if there's fault on the part of the contractor. And that's the nature of the clauses that are unique to cost-type contracts. It includes tortuous conduct. It includes mistakes of virtually every kind imaginable. And I agree with Your Honor that there is a limit. And perhaps... Somebody's got to write what we used to call a Brandeis brief in law school. Yes, sir. Those are that old. I am that old. I mean, I would assume that you can catalog hundreds and hundreds of examples of costs that were associated with, quote, negligent behavior. Correct, Your Honor. And still have always been paid. Every single one of them, in my experience, has been paid under what we call the Dash 7 Clause of a cost-type contract. There has never been a case yet in which the government has refused to pay such costs. What is the Dash 7 Clause? Can you help me out with that? Yes, Your Honor. I've got to go find it. It's 52-228-7, Your Honor. What's it say? Well, I'm going to go and read it. Sorry, I don't have 52 with me. It's a fairly complex clause, but its bottom line is that to the extent that costs of negligence, tort costs, for example, are not insured, the government will pay them. And by the way, the government pays the premiums on the insurance policies also. And the title of the clause is Insurance Liability to Third Persons. Okay. And after a number of subheadings involving whether the insurance policies are to be approved, et cetera, et cetera, and the requirements for notice. So your argument is that because the FAR expressly recognizes those kind of costs and says that they are allowable, that they are ipso facto reasonable? No, Your Honor. See, we've got this reasonability regulation that floats over on top of allowability, right? I never did get to hear. I'm sorry. I do want to know what this Dash 7 Clause says because I think it actually says the government will allow costs that are reasonable. So I'm not sure that it helps you except that, again, Judge Cogner might be right. In a cert petition or a petition for in bank, you could argue that mistakes were always deemed reasonable by the government in the past. But I think that Dash 7 Clause hinges on reasonableness of the cost as well. I think that's not the case. I'm trying to find. It's a long clause, but I'm trying to find it. It's the term allowable cost. That's correct. And allowable is defined in FAR 31.2 as a number of different things, but always requires that the cost be reasonable. So allowable cost is a word that is otherwise defined as reasonable cost in the FAR. If it pleases the Court, I am prepared to say that even costs under cost reimbursement contracts must be reasonable. There isn't any doubt about that. But the issue here is how one defines reasonable. And the standard for reasonableness in a cost-type contract is not the same as the standard for reasonableness in a fixed-price contract. What is the standard in a fixed-price contract? The standard in a fixed-price contract, Your Honor, is that the contractor assumes all of the risks. If the costs that it actually incurs become unreasonably high, the contractor loses money. That is not the case in a cost-type contract. In a fixed-price contract, the contractor assumes the risk of any cost that runs over whatever the agreed price was. That's exactly right. And where that is triggered in a fixed-price contract is in the negotiation of a fixed-price contract. Under Part 31, Section 2, when you negotiate a fixed-price contract, the government is entitled to use in its negotiation standards of reasonableness and to negotiate down the contractor if it finds that the proposed costs are not reasonable. Once the contract is awarded, the entire risk is on the contractor. I think we'd better hear from the government. I will restore your three minutes of rebuttal, and if Mr. Prouty needs extra time, we'll be lenient and give it to him. Thank you, Your Honor. Just set him up for 15 minutes. So if your red light goes on and we're still hard-moving you with questions, you can keep going. Of course, Your Honor. Thank you. And good afternoon, and may it please the Court. I think the bottom line is what Judge Morales said at the very beginning. KBR 1, the September 5th decision by this Court, is just straight line down the line, squarely addresses this case. I mean, it addresses the same arguments. Actually, in a footnote in our brief, we said that KBR went further than it did in KBR 1 in its briefing here, right from the beginning. But if KBR says willfulness, gross negligence, those things are not – it's stated in unreasonable behavior, but unreasonable behavior is broader than that. But does it actually say that simple negligence is sufficient under the reasonably prudent person standard? I don't think it actually used those words, Your Honor. It basically just said you've got to be reasonably prudent, and it said the trial court got it right when it did what it did, which is take the language in FAR 31, section 301 – 301.201-3 and applied it. And that's exactly what the trial court did in this case. Same trial court judge, same application of the standard in FAR. And the suggestion that there's a different standard of review for a fixed-price contract versus a cost-plus contract like we have here, well, certainly there is no standard of reasonableness in a fixed-price contract. But I think that Mr. Fenster is arguing that the standard for reasonableness ought to include mistakes that were negligent, but maybe not include the mistakes that were grossly negligent. And I think that he's trying to argue that, in this case, the inadvertent quadrupling when evaluating the price vis-à-vis the subcontractor was a simple mistake of negligence, and that that is something that the government in his very lengthy experience with these sorts of things has always included to be within reasonable cost. And so I think his view is whatever the definition of reasonableness is, it is consistently included exactly this sort of cost, and that it ought to be included here. So why don't you address why that's not the case? Surely. First of all, of course, as Judge Coventry has pointed out, in 1987 there was a shift of the paradigm, where basically it became the burden of proof upon the contractor. One might say that, Your Honor. It was a change. It certainly changed the way things were addressed. Well, yeah, but that has nothing to do with whether a mistake falls within the definition of reasonableness. Sure. I guess Your Honor's question was, first of all, whether or not Mr. Fenster's prior experience changed things. Well, of course, there was a change in 1987. But in any event... But that change is irrelevant to my question, because my question goes to the standard, not whose burden it is to prove the standard. That's all that was changed, correct? Yes, Your Honor. The burden of proof, who has the burden of proof? Correct, Your Honor. But the standard itself was not otherwise changed. It was not, Your Honor. It was not. So my question goes to Mr. Fenster's suggestion that in many, many years of experience here, the government has consistently paid, even when there has been a mistake that caused the cost, as long as a reasonably prudent person would have otherwise potentially made such a mistake. Now, the mistakes that Mr. Fenster was talking about, that were typical of torts, not mistakes as far as, oh, I did a bad job negotiating, which is what we have here. There's never been an instance where... Is it a bad job negotiating? Oh, please, that's exactly what TBR-1 is all about. You did a bad job of negotiating with a $40 million leverage factor that the court, everybody emphasized and said, gee whiz, you screwed. You got jipped in the pricing because you didn't use your leverage in bargaining. Well, in KBR-1, Your Honor... That's what I mean. And that's what was the tow-tripper there. There was a lot more going on. And one of the things that should be important about KBR-1 is that KBR said, the reason why our prices that have been questioned by the government are reasonable is because we did a good job negotiating. And by opening the door of how good a job they did negotiating by saying, this is why we should win because we did a really good job negotiating, here's our negotiator, that opened the door for us questioning, well, what did the negotiator do? And the negotiator herself testified, her superiors testified, they were subject to cross-examination, and it turned out... Yeah, but I mean, what your adversary is saying is whether the issue was raised by whomever is irrelevant in cases in the past, a mistake in negotiating would not be held against you on a reasonableness test. Well, it's not a question of a mistake or you did bad math or something of that nature. Right. In any way, you messed up. I mean, you missed something. You did not act reasonably. Yeah, he's saying what he was. If it doesn't make any sense for the government to have to pay the cost of a negligent truck driver mowing somebody down on a job site, if they're going to pay that cost, which he cited they're going to pay, well, then why wouldn't they pay one negligence in bargaining? Well, first of all, that's a specific carve-out the FAR has. When the FAR decides that it wants to address things like a negligent driver, because you are going to have negligent drivers on any sufficiently large government contract, it says, look, accidents happen. We're going to pay for that. That's part of the cost of doing business. But if you're going to do business, you have to do business reasonably. And that is, of course, you know, we're not going to pay. Right, but they say doing business reasonably includes having negligent truck drivers. Correct, but it does not include paying $2 million as nice as your car might be driving. Let me ask you this question, sir. That car. The way we were talking, the way we kind of got things shaped up as to the relevance of KBR 1 was by pointing out that in KBR 1, the pitch was for gross negligence, gross misconduct, et cetera. Now, your adversary's come in and pitched it the same way in his brief, but he seems to have retreated somewhat in oral argument. What happens if I take his argument here to be that he simply is arguing the negligence-type standard and say that you have to respect, by looking at other parts of the FAR, you have to respect that a cost can be reasonable even if the cost was incurred in circumstances where you would say the contractor was negligent, but that's irrelevant? I would say first that we have to have fidelity to the FAR part that's been questioned. But if I have the room under KBR 1, I'm a panel and I'm bound by it. Yes, Your Honor. Now, they had an argument put to them to say, well, they shot for the moon. They set a standard that was X, and that standard was shot down. Now they come in front of us and ask for a standard of X minus 10. The panel in KBR 1 didn't just say that KBR's moonshot was wrong. They said, quote, and I'm looking at page 17 of the slip opinion, and I apologize. Let me find where you are in the slip opinion. So, give me a sec. So, where are you, page? Page 17, Your Honor. You don't know what that equates to? The slip opinion? Yes, Your Honor. Can you tell me under what standard? It's portable now on Westlaw. I know, I have the Westlaw version. It is the section, Your Honor, of KBR's appeal, room number 1, under discussion. Okay, give me a sec. Room number 1, not under background. Let me go to discussion. Okay, and under KBR's appeal, and then under the little number 1, the Court of Federal Claims? Yes, Your Honor. And then it's about, on the slip opinion, it's three pages later. Three pages later, but before you get to A? So, is this where they're talking about absence? Yes, before A, Your Honor. That's what I read earlier. Okay, now where are you exactly? I'm at the part that says, the paragraph begins, rather the Court of Federal Claims. Rather. Rather the Court of Federal Claims. Okay, I see it. And this is just dispositive. It says, the Court of Federal Claims applied the correct standard articulated by section 31.201-3, and its analysis was consistent with the regulation's admonitions. It basically said, the trial court got it right. And that is exactly the same standard that the trial court, in this case, applied. Because, of course, same trial court judge, if you read the opinions, it's the same standard that's applied. So the panel in KBR 1 said the trial court's application of standards in its Mimi case was correct. Not just the KBR one. There wasn't any argument in KBR 1 that the failure to have done the negotiating was negligent behavior and should have been forgiven under a negligent standard. There was not that argument, no. No. But it did basically say, the court got it wrong, and there was no retreat, and there was no determination by the Court of Appeals, the panel in KBR 1, well, we're not going to go as far as the government is going to go. We're going to step back. Instead the panel said, the far means what it says. The language is clear. And the basis for the trial court. But I don't understand. The far means what it says. He agrees with that. It means reasonableness, but his definition of reasonableness includes negligence. Yours doesn't. That just wasn't an issue in KBR. Well, frankly, Your Honor, I think that anything that is unreasonable is negligent. If you think about what negligence is. Clearly that's not an issue that was addressed by this KBR panel. I'm trying to decide, like Judge Clevenger, how much room this court has to actually head-on address reasonableness and what it means, i.e., does it include negligence. I am finding, as this argument evolves, that KBR 1 didn't head-on address that point, and so there exists room for us. So now if you're conceding that, which I didn't understand you to be conceding, but if you are conceding that. I'm not. I'm saying that what determines reasonableness, there is a test that is put out there, a reasonably prudent business person, and that there is a non-exhaustive list of examples to be applied. And the court applied those examples, and KBR argued we should look at a four-point list. And that's how they determined what was reasonable and what was not reasonable under those circumstances. And it's a non-exhaustive list. One could add to it depending upon the circumstances. There is no need to. Right. So what it is is you have generally accepted sound business practices, and if generally accepted sound business practices and cost contracts are to submit costs to the government for reimbursement where negligent behavior has led to the cost, then that fits within the definition of the regulation. Well, KBR never argued that just merely submitting costs to the government constituted a sound business practice. That was never before the trial court. It was never before this court until perhaps just now. But the suggestion is what is a reasonable sound business practice? Arms-length bargaining. None whatsoever in this case because what happened was Mr. Nasry said how much is it going to cost? ABC said it's this much. Sound business practices, comma, arms-length bargaining, comma, federal and state laws and regulations. Yes. Comma, contract terms and specifications. I mean, you can build a lot into what generally accepted, I think your adversary would argue this, that you look at what happens in cost contracts and what's reasonable behavior in cost contracts, what's reasonable sound practice. The reasonable sound practice is not that there is no limit to what is reasonable. And, again, cost reasonableness is inherently a fact-based determination. Let's assume this case had been pitched. I'm sorry? Assume the case had been pitched differently and in front of the court of federal claims and here the contractor was arguing that this mistake in negotiating this cost for the personnel, for the cost of the people that work in the kitchen out there, because that's all that personnel costs is what's at stake here. Yes, sir. And they said, our guy made some mistakes. Our guy made some mistakes out there in the field and he was negligent. He was negligent. We don't think he was any worse than that. He was negligent. And we think, notwithstanding the fact that he was negligent, we ought to be able, those costs are reasonable. And they came in and cited all the other regulations that show negligence is OK. And the case had been pitched that way. And they would have argued to the court of federal claims, yes, the standard is reasonable. We're not asking for anything beyond that. But sound business practices and ordinary accepted, the prudent person in this setting, this happens all the time in cost contracts. Mistakes get made. And the government has historically paid them. Right? Yes, Your Honor. Then what would the decision have been written about what the standard is? Somebody say, no, excuse me, negligent behavior always takes you out? It would depend on what the negligent behavior was and whether it was the kind of negligent behavior that a prudent business person in the conduct of a competitive business engaged in and would otherwise be absolved of. Let's look at what happened here. This is not just a mistake where you forgot to carry the one. It was a mistake as far as looking at the whole paradigm of how you're going to do the costs wrong. Wait, no. Didn't he just double something, not realizing that the number had already been doubled? No, he doubled something and then doubled it after that. He said we're going to pay twice as much per person and then we're going to have twice as many people. Are you saying that the record establishes and the lower court found that he applied the totally wrong methodology, that at all points he believed that the appropriate thing for him to do was effectively quadruple? I really thought I understood the facts below to demonstrate this to be an inadvertent sort of double-doubling by accident as opposed to a fundamental misunderstanding of how to add these numbers up. If we read, the only evidence we have of what Mr. Nasri was thinking is his two-page memorandum, which of course is in the Joint Appendix the Crown Court addressed. And that two-page memorandum is at page 289 of the Joint Appendix, for your honor's assistance. But in any event, all he said is we're paying more people, it is going to cost twice as much per person, twice as many people, here's the math. And one might say, well, Mr. Nasri, one person could make a mistake. But KBR's system in place that it used to sell to the army was that it was going to be reviewed by other people. And those other people reviewed it. And they saw nothing wrong with it. They didn't catch the mistake. They didn't catch the error, the flawed methodology. Moreover, his methodology wasn't just flawed by virtue of what he thought about things. He said, well, you have to have twice as many people, twice as much equipment. That was a factual error because he knew what the people and equipment were that were being provided by ABC. And it was not twice as much. So is your argument now, as I understand it, that it is perhaps both KBR 1 and perhaps the FAR regulations allow for a mistake to fall within the definition of compensable expense, i.e., it's possible a reasonably prudent person may make a mistake, and the government may be willing in certain cases to pay for those mistakes under the FAR, but this is a very fact-specific case where the CFC made a factual determination that this isn't the kind of mistake a reasonably prudent person would have made, and so therefore it should be excluded. I'm going to have to disagree with you, Your Honor. It is a case-by-case analysis. All the law says that. But I guess the important thing I want to make sure that we're in agreement on is the idea that a reasonably prudent person could still have made a mistake that the government would find compensable under that standard, but not this kind of mistake and not in these facts. You're very hard-pressed to say that we'd have to hold a contractor to a making zero mistakes standard. There could be mistakes. It would depend upon the mistake. I don't know what, again, it's speculative. But there are some mistakes a reasonably prudent person, despite their best efforts, might end up making. And depending upon circumstances and whether there was adequate review and things of that nature, sure. We don't have that here. And the trial court didn't find it here. And, in fact, the trial court went so far as to say in footnote 19 of its decision that the mistake here was grossly underrejected. And for those reasons, unless the court has any further questions, thank you. Thank you. Mr. Spencer, you have three minutes Now that I've conceded that there is a standard of reasonableness that must be applied to cost-type contracts, the question still is, what is the standard? And the standard may vary. And the standard for reasonableness in a cost-type contract to be performed in a factory in Houston is not the same as the standard for reasonableness to be performed during a war when performance is going on on a battlefield and people are getting killed overhead. A lot of people. So reasonableness has a four-part test under FAR 31201-3. Just so I know, did you give me the sort of colorful imagery because you meant to say that this very person when making these calculation errors had all of this going on around him as he was making them? He absolutely did, Your Honor. There is no question about that. Everybody was under stress. This contract was growing by leaps and bounds every single day. The war was escalating. No, no. Not with the war escalating, but was the person who made the inadvertent mathematical error or methodological error in either event in the middle of the war zone with people dying around him as you colorfully described it, or was he making that decision from the comfort and safety of a desk where he was not subject to bullets? Because quite frankly, a reasonable person with a gun to their head may well add up things wrong. But a reasonable person sitting at their desk making the same addition mistake may not be reasonable. I don't remember where Mr. Nasri was. I believe he was in Kuwait. Kuwait itself was not a safe place. He was having to turn out a myriad of subcontracts and they kept getting changed as the record carefully discloses day by day by day. I think the problem is the government has acknowledged, quite frankly, a very good point for you, maybe not in this case, but in general, because they've acknowledged that a reasonably prudent person standard could afford for the payment of things that constituted mistake. I mean, I understood him to sort of accept that the standard includes that, but then to point to the careful factual analysis in this case and say that this isn't the kind of mistake that a reasonably prudent person could make. So I feel like we're not really arguing over the standard anymore. We're now arguing over the facts of this case. So tell me how the facts of this case demonstrate a mistake that a reasonably prudent person could otherwise make. The pressures that the contract created because of the day by day changes in the government's requirements. What about the review, though? I mean, there were supposed to be these levels and layers of review. There were layers of review, probably two layers of review, which included the green sheet review. All of the reviewers suffered the same problem. They had too much to do. In addition, that kind of review was supposed to be conducted with the government. Under a cost type contract, the government is required by FAR regulation to provide support so that this problem never occurs. I guess here's the problem. I have four little children. In my home, quite frankly, there's always somebody screaming something in the background. Does that justify me making mistakes? Is that the subjective standard we use to decide whether I acted as a reasonably prudent judge when I make a mistake because my children are screaming and my head is pounding and I make a mistake? Or do we factor in the particular circumstances that those individuals were under that are unrelated to this contract? Namely, they had a lot of work to do. They were otherwise in a dangerous place. Does that contribute to the standard? Because if so, it makes it really subjective, right? If it's really subjective, then this person, when he made this decision, was in a dangerous situation, so he made it wrong, and that somehow justifies all the level of review that went on after it. Would a reasonably prudent person make this mistake in any set of circumstances? Or do we take into account the unique circumstances that individual was in when he made them and it may not apply to any other case? Both is my answer. The unique circumstances, surely. The children screaming analogy, surely. And whatever else is going on under a cost-type contract, which includes the fact that the premise for the cost-type contract is that you are going to make mistakes. I think I thought the court of federal claims doffed its hat to the circumstances that were there. They recognized that it was a war zone. It doffed its hat, not at the end. I understand that, sir, but I mean, doffing the hat kind of does you in because if they had ruled, for example, that the circumstances in the war zone are absolutely irrelevant, then you'd have a leg to stand on to say they applied the wrong standard. Your Honor. When the trial judge tells me I'm aware of what was going on out there, I've got that under control, I recognize the difficulty of the circumstances, it seems to me that that, whether it's a doffing of the hat or blowing you a kiss from your perspective, it's enough. There's no... How can I do any more? I send it back and say, excuse me, you didn't pay enough attention to what was going on in the theater of war? There's no way to know from what the trial court did whether the judge took it into consideration at all. There's no way of knowing because what the judge did... There's no recognition in the opinion of the circumstances. There's a recognition at the front end, but there's nothing in the analysis, the cost analysis, that indicates that the judge took it into consideration at all. I thank both counsel for their argument. The case is submitted. This concludes our proceedings for today. All rise. The Honorable Court is adjourned until tomorrow morning at 10 o'clock a.m. Maybe you both got some ideas for the next round in that first case. Yes, sir. Most definitely.